IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BABS C. HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-13-343-R |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's applications for benefits under the Social Security Act. This matter was referred for hearing, if necessary, and submission of findings and recommendations pursuant to 28 U.S.C. §§ 636(b)(1)(B), 636(b)(3), and Fed. R. Civ. P. 72(b). The administrative record (Tr.) has been filed, and the appeal has been fully briefed and is ready for disposition. For the reasons set forth below, the undersigned recommends the Commissioner's decision be **REVERSED AND REMANDED** for further administrative proceedings.

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

# I. THE DECISION UNDER REVIEW

In a decision issued on March 27, 2012, the administrative law judge (ALJ) found that Plaintiff was not disabled under the Social Security Act and therefore not entitled to disability income benefits, or supplemental security income benefits. (Tr. 16-32). The ALJ found Plaintiff to have the following severe impairments: Lyme Disease; hypothyroidism; fibromyalgia; and recurrent deep vein thrombosis. (Tr. 18). The ALJ also noted that Plaintiff has been diagnosed with reflex sympathetic dystrophy, but he found that this had no more than a minimal effect on Plaintiff's ability to perform basic work activities, and so was not severe. (Tr. 19). The ALJ found that none of these impairments, whether alone or in combination, met or equaled the criteria for any of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. (Tr. 19).

Upon continuing the sequential analysis, the ALJ found Plaintiff to have the residual functional capacity (RFC) to perform a limited range of light work, described as follows:

> [C]laimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. The claimant can occasionally climb, balance, stoop, kneel, crouch and crawl. The claimant can understand, remember, and carry out simple routine and repetitive tasks. The claimant can respond appropriately to supervisors, co-workers, the general public, and usual work situations.

(Tr. 21).

Based upon this RFC finding, the ALJ found that Plaintiff was unable to perform any of her past relevant work as a salesperson at a furniture, hardware, and appliance store. (Tr. 31). However, the ALJ found that there were a significant number of jobs that she could perform in the national economy. (Tr. 31.) In reaching this finding, the ALJ relied on the testimony of a vocational expert (VE) and, as a framework, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. (Tr. 31-32). The VE identified the following representative jobs that a person with Plaintiff's RFC and vocational factors could perform: office helper; mail clerk; and ticket seller. (Tr. 32).

## II. ERRORS ALLEGED ON APPEAL

In this appeal, Plaintiff alleges that the ALJ erred in two respects. First, that the ALJ failed to properly evaluate the medical opinion evidence. ECF No. 16:10, 5-14. Plaintiff alleges that the ALJ improperly analyzed the opinion evidence of four medical sources, including one treating physician. *Id.* Second, Plaintiff alleges that the ALJ's RFC assessment was legally flawed and not supported by substantial evidence. ECF No. 16:21, 16-18.

### A. Evaluation of the Medical Opinion Evidence

The Tenth Circuit Court of Appeals has long recognized the proper analysis and assignment of weight to be given to medical opinions. When considering the opinion of a treating physician, the ALJ must first determine whether the opinion should be given "controlling weight" on the matter to which it relates. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10$^{th}$Cir. 2003). The opinion of a treating physician must be given

controlling weight if it is well supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. *Id.* (applying SSR 96–2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). If the opinion is deficient in either of these respects, it should not be given controlling weight. The regulations require the Commissioner to "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527

Even if the opinion of a treating physician is not given controlling weight, it is still entitled to deference:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96–2p, 1996 WL 374188, at *4.

If the opinion of a treating source is not given controlling weight, it is weighed using the factors used to weigh all medical opinions: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by

4

relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c).

### 1. Dr. Brady[1]

Plaintiff first notes that psychologist Douglas O. Brady, Ph.D., opined that Plaintiff's memory and reaction time were significantly below normal and that she possessed neurological impaired functions in visual and auditory attention as well as concentration; these findings were based on a MicroCog Assessment Procedure, the Conners Continuous Performance Task (CPT) test, Neurobehavioral Functioning Inventory, and the Beck Depression Inventory. ECF No. 16:12. Dr. Brady noted Plaintiff's report that she had had Lyme disease, and that there *are* neurocognitive and neurological sequelae "well-documented in her medical history." (Tr. 214) (emphasis added). He added that Lyme disease can have chronic patterns of symptoms for years after diagnosis and treatment—"perhaps even forever." *Id.* Plaintiff claims that the ALJ neither explained the weight given to Dr. Brady's opinion, nor properly evaluated it in arriving at his RFC finding. ECF No. 16:6-8.

The Commissioner argues that the ALJ's RFC finding "accommodated" Dr. Brady's opinion by including limitations related to impaired neurological functioning:

---

[1] Plaintiff was referred to Dr. Brady for examination by Plaintiff's treating neurologist Dr. Nabila H. El Zind, M.D., and the referral was before her application for social security disability or income benefits. She was referred because of complaints to her neurologist of weakness, tiredness, depression, mood swings, and chronic fatigue. (*See* Tr. 211).

5

Plaintiff "can understand, remember, and carry out simple routine and repetitive tasks" and "can respond appropriately to supervisors, co-workers, the general public, and usual work situations." ECF No. 20:6-7. Next, the Commissioner contends that Dr. Brady's medical opinion was not accompanied by any specific limitations in work-related functional abilities. *Id.*

Furthermore, the Commissioner contends that because the ALJ does not need to reject or weigh Dr. Brady's opinion unfavorably, "the need for express analysis is reduced." ECF No. 20:7 (quoting *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004) ("in this case none of the record medical evidence conflicts with the ALJ's conclusion that claimant can perform light work").

The Commissioner does not disagree with Plaintiff that the ALJ failed to state what weight he gave Dr. Brady's opinion. Furthermore, the undersigned's review of that part of the decision reveals that the ALJ failed to discuss any of the factors used to evaluate medical opinions, leaving a reviewer on appeal to speculate what weight, if any, was assigned to Dr. Brady's opinion. *See* 20 C.F.R. § 404.1527(c).

Upon review of the decision, the undersigned simply cannot ascertain what weight, if any, the ALJ gave to Dr. Brady's decision. In a similar situation, the Tenth Circuit distinguished *Howard,* stating:

> In *Howard,* the claimant challenged as conclusory and unsubstantiated the ALJ's RFC determination. We agreed that the ALJ's lack of analysis was troubling but "conclude[d] that substantial evidence in the record support[ed] the ALJ's RFC determination," emphasizing that the ALJ had "discussed all of the relevant medical evidence in some

6

> detail .... and [that] ... none of the record medical evidence conflict [ed] with the ALJ's conclusion that claimant c[ould] perform light work." This case is different. In this case, the ALJ did not provide a detailed discussion of all of the relevant medical evidence. He provided an abbreviated summary of the medical evidence that acknowledged Ms. Ledford had the "acute disease of carpal tunnel," without discussing her reduced grip strength or identifying her treating physicians. Without the ALJ's consideration of the reduced-grip-strength evidence it is unclear, as previously alluded to, whether the record medical evidence conflicts with the ALJ's RFC assessment. Thus, we cannot conclude on the facts of this case, as we did on the facts of *Howard,* "that substantial evidence in the record supports the ALJ's RFC determination." We do not have sufficient information to make such a determination.

*Ledford v. Barnhart*, 197 F. App'x 808, 811 (10th Cir. 2006) (quotations, internal citations, and record citations omitted). Here, the ALJ's finding that Plaintiff "can understand, remember, and carry out simple routine and repetitive tasks" and "can respond appropriately to supervisors, co-workers, the general public, and usual work situations," does not obviously account for various deficits discovered by Dr. Brady upon administering several standardized tests. In particular, the MicroCog Assessment Procedure showed that for a woman her age, Plaintiff had deficits in processing speed, memory, reaction time, immediate information recall, delayed recall of auditory information, difficulty with verbal abstract reasoning, and difficulty with verbal to visual object matching. (Tr. 212). The Conners Continuous Performance Test revealed difficulty with inattentiveness, risk for committing mistakes in her day-to-day routine "and certainly with her business environment." (Tr. 213):

> Her ability to maintain attention and concentration was impaired. She displayed obvious distractibility. She has difficulty with impulsivity or the tendency to respond quickly with errors for even minor attention and concentration skills. In addition, she tends to perseverate and make the same mistake over and over and over.

*Id.* Dr. Brady found these results to "certainly" be within the clinical range and with a confidence interval that is "significant." *Id.* Dr. Brady summarized overall cognitive functioning as reflecting marked atypical deficiencies for omissions and commissions. Dr. Brady also found that "there are neurocognitive as well as neurological sequelae well documented in her medical history." (Tr. 214). The undersigned notes that Plaintiff was referred to Dr. Brady by her treating neurologist (before she filed for disability), and that Dr. Brady had Dr. El Zind's reports. (Tr. 211). The limitations in the RFC do not appear to account for Dr. Brady's finding of marked impairment in her overall cognitive functioning, which was not limited to her day-to-day routine but extended to her work environment.

The undersigned therefore recommends that this decision be remanded so that the ALJ can consider Dr. Brady's opinion using the factors including in the Social Security regulations. However, for the Commissioner's guidance on remand, the undersigned notes Plaintiff's statement that Dr. Brady has served as medical expert for the Social Security Administration. ECF No. 16:14. The regulations give examples of "other factors" that should be considered when determining how much weight to give to a medical opinion, "[f]or example, the amount of understanding of our disability

programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding ...." 20 C.F.R. § 404.1527.

### 2. Dr. Danaher

Plaintiff was sent to consultative psychologist, Dr. Danaher, in July 17, 2007. The ALJ noted Dr. Danaher's finding that Plaintiff's speech was "logical, faltering, and frequently digressive." (Tr. 24). The ALJ also mentioned Dr. Danaher's observation that during evaluation that Plaintiff's cognitive processing appeared delayed. (Tr. 24). The ALJ also mentioned Plaintiff's mathematical error involving money during his evaluation. The ALJ acknowledged Dr. Danaher's finding that Plaintiff's "ability to understand, remember and carry out simple and complex instructions in a work environment would be rated as poor," but concluded that the finding was inconsistent with Dr. Danaher's own objective medical findings and thus was based on Plaintiff's subjective report of symptoms and limitations. (Tr. 24).

Plaintiff argues that the ALJ left out Dr. Danaher's observation that Plaintiff had a great deal of difficulty finding his office due to problems with directions, and that she was dressed unusually in large rubber boots that she had intended to change out of upon arrival (but forgot the other pair of shoes). ECF No. 16: 11-12. Plaintiff also contends that the ALJ failed to note that Dr. Danaher had reviewed Dr. Brady's report, and that Dr. Danaher described Dr. Brady's report of significant atypical deficiencies consistent with neurologically impaired functioning for visual and auditory attention and

concentration. (Tr. 227). One of Dr. Danaher's findings was also omitted from the ALJ's discussion:

> It is also the opinion of this Psychologist that this individual has been open and honest in providing information for today's mental status examination. This opinion is based on the spontaneity of her interactions with this Psychologist as well as the consistency of her reported history and symptoms. No evidence of exaggeration or malingering was noted.

(Tr. 230). Plaintiff argues that the ALJ, without any comment about Dr. Danaher's opinion, chose to adopt the opinion of yet another consultative psychologist, Dr. Gail Poyner. ECF No. 16:12-13. Plaintiff contends that Dr. Poyner is the only one of the examining physicians who found evidence of malingering, and did so using two standardized tests for which the Social Security Administration no longer provides reimbursement: Structured Interview of Reported Symptoms, and Test of Memory Malingering. ECF No. 16:12-13; (Tr. 258). As stated by the Social Security Administration, "Do not purchase symptom validity tests (SVT) to address issues of credibility or malingering as part of a CE. Tests cannot prove whether a claimant is credible or malingering because there is no test that, when passed or failed, conclusively determines the presence of inaccurate self-reporting." https://secure.ssa.gov/apps10/poms.nsf/lnx/0422510006 (accessed July 15, 2014). As the Commissioner notes, however, the SSA also states that "[w]hen the results of SVT are part of the medical evidence of record, we consider them along with all of the relevant evidence in the case record." *Id.* In any event, Plaintiff is correct that the ALJ

apparently adopted the findings of Dr. Poyner based on these tests, without even acknowledging—much less discussing—any conflicting reports.

In addition to discussing the evidence supporting his decision, the ALJ also must "discuss the uncontroverted evidence he chooses not to rely upon, as well as *significantly probative evidence he rejects.*" *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (emphasis added). The ALJ obviously relied on the tests administered by Dr. Poyner in finding that Plaintiff was malingering, but never discussed Dr. Danaher's opinion that Plaintiff was neither exaggerating nor malingering. Dr. Danaher's opinion was "significantly probative" on the issue of malingering, but the ALJ never explained why he rejected it in favor of Dr. Poyner's report. Therefore, this case must be remanded for the ALJ to set out his specific findings and his reasons for accepting or rejecting the medical opinion evidence.

### 3. Drs. Hill and Ghezzi

Dr. Hill, Plaintiff's primary care physician, opined that she should elevate her legs constantly due to her deep vein thrombosis. Consultative internist, Dr. Ghezzi, noted that although elevating the legs seems appropriate she questioned the wisdom of Plaintiff continuing to take estrogen and smoking. (Tr. 251). Plaintiff contends that the ALJ rejected these opinions, giving no legitimate reason. ECF No. 16:19. The ALJ discussed Dr. Hill's treatment of Plaintiff, including his recommendation that she elevate her legs due to DVT, but found that Dr. Hill's opinion relied "heavily" on the subjective report of symptoms and limitations and "seemed to uncritically accept as true most, if

not all, of what the claimant reported." (Tr. 30). The ALJ gave Dr. Hill's opinions "little weight," and completely rejected any limitation related to Plaintiff keeping her legs elevated, as the RFC contains no such limit or anything similar, such as a sit/stand option. Plaintiff argues that the medical record shows that Plaintiff does have chronic phlebitis in her legs, and takes regular medication for the condition. Accordingly, rejecting Dr. Hill's opinion as based solely on Plaintiff's subjective complaints is not a legitimate reason for not providing any limitations related to her DVT. The Plaintiff also argues that although the ALJ discussed Dr. Ghezzi's opinion, including her comment that elevating the legs is "certainly appropriate," he never indicated what weight he was giving her opinion. ECF No. 16:19-20.

Even given the fact that the ALJ gave Dr. Hill's opinion "little weight," it is difficult to determine from the ALJ's discussion why the ALJ thought the RFC should contain no limitation for the elevation of her legs to decrease the risk of a blood clot associated with her DVT. The ALJ's failure to indicate what weight he was giving to Dr. Ghezzi's opinion that elevation of the legs would be "certainly appropriate," makes it even more difficult to understand why there are no associated limitations in the RFC for Plaintiff's DVT.

For the reasons stated above, it is recommended that this case be reversed and remanded for further proceedings. On remand, the undersigned urges the Commissioner to more fully explain why Plaintiff was found to have no limitations related to "recurrent deep vein thrombosis," particularly in light of the ALJ's finding that

this impairment was severe and both Plaintiff's treating physician and the retained consulting physician recommended elevation of the legs.

### B. Whether the RFC is Either Legally Flawed or not Supported by Substantial Evidence

Plaintiff contends that in addition to the above legal errors, the ALJ's RFC finding is not supported by substantial evidence. ECF No. 16:22-24. Plaintiff goes on to a discussion of evidence which she believes should have resulted in a more restrictive RFC. In light of the above recommendation that this case be reversed and remanded so that the ALJ can properly consider the medical opinions, it is unnecessary at this time to consider the issue of substantial evidence.

## RECOMMENDATION

Having reviewed the evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner should be **REVERSED AND REMANDED** for further administrative proceedings.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation. See 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objection should be filed with the Clerk of the District Court by **July 31, 2014**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

**ENTERED** on July 17, 2014.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE